### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 1:15MJ152 |
| | ) | |
| EDUARDO ALEXANDER DANA | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PROBABLE CAUSE

Eduardo Dana is before the Court on a complaint charging him with one count of Threats Against the President, in violation of 18 U.S.C. § 871. This Court is well aware of both the facts and the procedural history of this case. In short, this Court ordered Mr. Dana's release over the government's objection. The Chief Judge subsequently reviewed the video evidence and this Court's Release Order *de novo* and affirmed the Release Order. In doing so, the Chief Judge commented on the record that the government may have trouble obtaining an Indictment with this evidence. The Chief Judge's caution was not unfounded: On September 2, 2025, the government notified the Court that the grand jury declined to indict Mr. Dana on 18 U.S.C. § 871. Notwithstanding the no-bill, the government opposed Mr. Dana's motion to dismiss. The Court has heard the audio evidence of Mr. Dana's alleged threat. As citizens of the District of Columbia found, there is no probable cause that Mr. Dana uttered a Threat as defined by the statute and the caselaw interpreting it.

### I.      Summary of Relevant Facts

On August 17, 2025, Eduardo Dana was allegedly observed damaging a light fixture outside a restaurant in the Logan Circle area in the District of Columbia.  In response to the damaged light fixture, multiple Metropolitan Police Department (MPD) officers and Federal Bureau of

Investigations (FBI) agents descended upon Mr. Dana—who had remained in the area—to arrest him.  The body worn camera footage depicts at least four to five FBI agents and several MPD officers arresting Mr. Dana. A crowd gathered to protest the use of more than four federal agents to arrest an unarmed man, but Mr. Dana remained calm and peaceful, even telling the crowd, "It's ok." He appears inebriated. Officers placed him under arrest and put him in a police car. During the entire encounter, Mr. Dana did not resist or try to run.

Once inside the police car, Mr. Dana can be heard on the camera advising the officer that he is intoxicated and that he had "seven alcoholic beverages, seven wines, wine, an alcoholic beverage." He is slurring his words. He is heard asking the officer what he's being arrested for: "am I being charged with disorderly conduct?" He is also heard advising the officers that he has a mental disability. The officer advises that Mr. Dana is being charged with misdemeanor destruction of property. Mr. Dana then begins to ramble and mumble, saying, "I am going to go to the restaurant and fuck the people up," to which the officer responds, "you just got another charge right there." Mr. Dana continues to ramble. He rambles, "I was just trying to go home." "They can't fuck with me." "I speak Russian and Italian." "I am not going to tolerate fascism, I am going to protect the constitution by any means necessary. If that means killing you, and killing the president, I will do that." The officer then (in a somewhat cavalier tone) radios, "call the secret service, he just made a threat against the president." Immediately after making that statement, Mr. Dana is heard loudly singing "*ba ba ba ran, ba ba ran*." Once at the station, Mr. Dana was placed in a cell.  Video captures Mr. Dana cordially thanking the officers and lying on the floor, singing and yelling non sequitur, incomprehensible statements.

**II.    Argument**

Mr. Dana's statements were not Threats for the purposes of 18 U.S.C. § 871, which reads:

> Whoever knowingly and willfully deposits for conveyance in the mail or for a delivery from any post office or by any letter carrier any letter, paper, writing, print, missive, or document containing any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States . . .or knowingly and willfully otherwise makes any such threat against the President . . . shall be fined under this title or imprisoned not more than five years, or both.

Under the "true threats" doctrine, first articulated in *Watts v. United State*s, 394 U.S. 705 (1969), Mr. Dana's hyperbolic rambling does not constitute a criminal threat under Section 871. In *Watts*, the Supreme Court held that a conditional statement –similar to Mr. Dana's – if inducted into the Armed Forces and made to carry a rifle, "the first man I want to get in my sights is L.B.J" did not constitute a knowing and willful threat against the President under 18 U.S.C. § 871.

The Supreme Court recently reiterated only "true threats" can be criminalized and are thus not protected under the First Amendment. *Counterman v. Colorado*, 600 U.S. 66 (2023). Threats statutes must be interpreted "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Watts,* 94 U.S. at 708 (internal quotation omitted). Critical here, the Court held that hyperbolic statements are not "true threats." Likewise, idle statements do not constitute "true threats." As the Court explained:

> The "true" in that term distinguishes what is at issue from jests, "hyperbole," or other statements that *when taken in context* do not convey a real possibility that violence will follow (say, "I am going to kill you for showing up late"). *Watts v. United States*, 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (per curiam). True threats are "serious expression[s]" conveying that a speaker means to "commit an act of unlawful violence." *Black*, 538 U.S. at 359, 123 S.Ct. 1536.

*Counterman* at 74; *see also United States v. Hoffman,* 806 F.2d 703, 705 (7th Cir. 1986) (the government must establish that the communication constitutes "a true threat," rather than "idle

talk."); *United States v. Lincoln*, 403 F.3d 703 (9th Cir. 2005) (vague statement in letter that some unknown "they" would kill the President at some unknown time in the future was not a true threat); *United States v. Olson*, 629 F. Supp. 889 (W.D. Mich 1986) (angry political statements about President's foreign policy were not true threats).

The standard for determining what is a "true threat" is not a simple objective standard. To ensure the First Amendment is not impinged, the government must also demonstrate that the speaker was subjectively aware that the statements could be understood as threats, using a recklessness standard. *Counterman* at 68. The government must prove that the defendant made the threat with the requisite *mens rea*, that the defendant "had some subjective understanding of the threatening nature of his statements." *Counterman* at 69 (2023). The Fourth Circuit has held that the *mens rea* requirement under Section 871 is even more specific: "Where a true threat against the person of the President is uttered without communication to the President intended, the threat can form the basis for a threat under Section 871(a) only if made with the present intention to do injury to the President." *United States v. Patillo,* 431 F.2d 293 (4th Cir. 1970). Finally, in *Rankin v. McPherson*, 483 U.S. 378 (1987), the Supreme Court clarified that statements not amounting to true threats, such as political hyperbole, are protected under the First Amendment and cannot be criminalized.

Any objective listener who hears the audio of Mr. Dana's drunken utterances can see that his ramblings while detained in the back of a police car do not rise to the level of "true threats" as established by Supreme Court precedent. His statements may have been ill-advised and were obviously made while he was under the influence, but they were conditional, unserious, and in no way conveyed a "real possibility that violence [would] follow." *Counterman* at 64 *citing Watts*. To the contrary, Mr. Dana's ramblings were precisely the type of hyperbolic, idle statements that

the Supreme Court and federal courts interpreting Supreme Court precedent have held to be insufficient to constitute "threats" under 18 U.S.C. § 871.

This Court should find—just as the grand jury did—that the government has failed to meet its burden because there is no probable cause that Mr. Dana committed the charged offense.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
ELIZABETH MULLIN
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500